430 So.2d 1 (1983)
FARMWORKER RIGHTS ORGANIZATION, INC. and Carmen Torres, Appellant,
v.
STATE of Florida DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
Nos. AN-206, AN-241.
District Court of Appeal of Florida, First District.
April 14, 1983.
Rehearing Denied May 19, 1983.
Robert J. Willis of Florida Rural Legal Services, Inc., Bartow, for appellant.
James M. Barclay, Dept. of Health and Rehabilitative Services, Tallahassee, for appellee.
SHIVERS, Judge.
This case involves an administrative rule challenge in which Farmworker Rights Organization, *2 Inc. (FRO) and Torres appeal the final order of the hearing officer which upholds the validity of Rules 10-5.11 and 10-5.12(8), Florida Administrative Code.[1] *3 Appellant urges several points on appeal, one of which merits discussion. We agree with appellant that the hearing officer erred in finding that the Department of Health and Rehabilitative Services (HRS) rules in question are in accordance with federal statutes and consistent with federal regulations. Therefore, we reverse.
FRO, petitioner below, is an educational and charitable non-profit corporation organized under Chapter 617, Florida Statutes, for the purpose, inter alia, of improving the health and economic well-being of Florida farmworkers. Torres is a member of FRO, and is a low income person of Hispanic background who has experienced difficulty in obtaining adequate medical assistance due to her lack of access to such places as Lehigh General Hospital, which hospital was issued a certificate of need by HRS pursuant to Rule 10-5.11. HRS, respondent below, is the state agency that has been designated by the state to run its certificate of need (CON) program pursuant to 42 U.S.C. § 300m (b)(1) and section 381.494, Florida Statutes. Because Florida complies with federal law on the subject, the state receives federal funding to run its CON program and other related programs. Section 381.494(7)(a), Fla. Stat. (1981),[2] provides that HRS shall issue or deny certificates of need "in accordance with present and future federal and state statutes." Pursuant to statutory authority under section 381.494 and section 120.54, Florida Statutes, HRS has promulgated, among others, Rules 10-5.11 and 10-5.12, Fla. Admin. Code. Rule 10-5.11 establishes the criteria against which CON applications are evaluated in Florida. Rule 10-5.12 provides for hearing procedures for aggrieved persons who are substantially affected by CON issuances or denials, and subsection (8) limits decisions which may be reversed or revised by the hearing officers to decisions as to the consistency or inconsistency of the application for CON with the criteria described in Rule 10-5.11.
FRO filed a petition for determination of invalidity of rules on December 28, 1981 pursuant to section 120.56, Fla. Stat. (1981), seeking a determination that Rules 10-5.11 and 10-5.12(8), Fla. Admin. Code were in conflict with section 381.494(7)(a), Fla. Stat. (1981) and were therefore an invalid exercise of delegated legislative authority. The gravamen of the FRO petition was that section 381.494(7)(a), Florida Statutes, requires HRS rules to be in accordance with federal statutes, and that federal statutes and regulations require state CON review agencies to consider the degree to which medically underserved persons, including low income and minorities, have access to the services under review. FRO claimed that since the HRS rules do not specifically provide a criterion addressing this "access" issue, the rules must fail. Rule 10-5.11, Fla. Admin. Code does not explicitly contain any criterion which addresses the access question, but does, however, have a criterion which requires HRS to consider "the needs that the population served or to be served has for such proposed health or hospice services."
The final order of the hearing officer upheld the validity of the challenged rules. The hearing officer found that while HRS's rules do not specifically provide for consideration of all the criteria set out in the federal rules, the state rules do not prohibit the consideration of such matters. The order further found that the extent to which a given health care facility would meet the needs of low income or minority persons would appropriately be considered under the provisions of the current rules and that HRS does not have a policy of failing to consider any of the criteria provided in the *4 federal rules. The order found that although HRS has not always considered the extent to which a proposed facility could meet the needs of minority and low income persons, it has sometimes done this in CON application proceedings. From that final order this appeal ensued.
Initially, appellee contends that appellants lack standing to challenge the rules in question. The hearing officer below specifically found that appellants did have standing, and we find this decision supported by competent substantial evidence. See Florida Home Builders Association v. Department of Labor and Employment Security, 412 So.2d 351 (Fla. 1982); Farmworker Rights Organization, Inc. v. Department of Health and Rehabilitative Services, 417 So.2d 753 (Fla. 1st DCA 1982).
Turning to the merits, it is clear that in order to be a valid exercise of delegated legislative authority under section 381.494(7)(a), Florida Statutes, the HRS rules in question must be in accordance with federal statutes. 42 U.S.C. § 300n-1 (c)[3] provides minimum criteria to be used by state agencies in conducting reviews of proposed health services. Among these minimum criteria is a requirement that the state agency consider "the extent to which such *5 proposed services will be accessible to all the residents of the area to be served by such services." 42 U.S.C. § 300n-1(c)(6)(E).
Another federal statute which explicitly relates to HRS's administration of the certificate of need program is 42 U.S.C. § 300m-2 (a)(4)(B).[4] This federal statute provides that state agencies such as HRS shall administer a certificate of need program which "is consistent with standards established by the Secretary [Secretary of Health and Human Services] by regulation." Thus, it is clear that in order for HRS's certificate of need rules to be valid exercises of delegated legislative authority under Florida statutes, any such rule must be "consistent with" federal regulations on the same subject in order to be "in accordance with" federal statutes.
42 C.F.R. § 123.412[5] is the federal regulation which directly relates to Florida Rule 10-5.11. Section 123.412 delineates specific *6 criteria for conducting certificate of need reviews which "the state agency shall adopt... ." (emphasis added). Section 123.412, by its terms, does not require state rules to "parrot" or copy the federal provisions word for word, but instead mandates that state criteria must be based only on the "general considerations" of § 123.412.
Subsections (a)(5) and (a)(6) of § 123.412 deal explicitly with the access of low income persons, racial and ethnic minorities, women, handicapped persons, the elderly and other underserved groups. 42 C.F.R. § 123.413(a)[6] states that the state agency (HRS) is "required" to develop criteria based on the considerations of § 123.412(a)(5) *7 and (6). Section 123.413(a) states, "the state agency shall make a written finding ... on the extent to which the project will meet the state agency's criteria based on the considerations in section 123.412(a)(5) and (6)... ." (emphasis added). Furthermore, 42 C.F.R. § 123.410(a)(6)[7] mandates that the procedures adopted by state agencies for conducting CON reviews "must" include "at least" written findings covering "the required findings under ... section 123.413(a)."
Rule 10-5.11 does not explicitly contain any criterion dealing with the access of low income and minority groups. The rule does contain a criterion in subsection (3) regarding "the need that the population served or to be served has for such proposed health or hospice service." We cannot agree with HRS and the hearing officer that this subsection is broad enough to include consideration of the criteria mandated by federal regulation. The facts as found by the hearing officer indicate that HRS has no policy to comply with the federal "access" criteria when reviewing every certificate of need application. The hearing officer found, in Finding of Fact Number 7, "there have been proceedings in which the Department has not specifically addressed the needs of low income and minority persons." This finding of fact conclusively shows that Rule 10-5.11 allows HRS to ignore a criterion which federal statutes and regulations mandate it consider. To this extent, Rule 10-5.11 is inconsistent with federal regulations, therefore, not "in accordance with" federal statutes, and thus in violation of the Florida Statute under which it was promulgated. Accordingly, the hearing officer's conclusion of law is erroneous. Rule 10-5.11 is an invalid exercise of delegated legislative authority. It also follows that Rule 10-5.12(8), which limits review of HRS decisions to their consistency with the criteria of Rule 10-5.11, is also invalid.
REVERSED.
WENTWORTH and JOANOS, JJ., concur.
NOTES
[1] Rule 10-5.11, Fla. Admin. Code reads in pertinent part:

10-5.11 Criteria against Which Applications are Evaluated.
(1) The relationship of health or hospice services being proposed to the applicable Health Systems Plan and Annual Implementation Plan and State Health Plan adopted pursuant to Title XV of the Public Health Service Act, except in emergency circumstances which pose a threat to the public health.
(2) The relationship of health services proposed to the long-range development plan of the person providing or proposing such health services.
(3) The need that the population served or to be served has for such proposed health or hospice services.
(4) The availability of alternative, less costly, or more effective methods of providing such proposed health or hospice services upon consideration of factors including, but not limited to, effects of competition of the supply of health services being proposed and improvements or innovations in the financing and delivery of health services which foster competition and service to promote quality assurance and cost effectiveness.
(5) The immediate and long-term financial feasibility of the proposal.
(6) The availability, quality of care, efficiency, appropriateness, accessibility, extent of utilization, and adequacy of like and existing health care services and hospices in the applicant's health service area.
(7) The availability of resources (including health manpower, management personnel, and funds for capital and operating needs) for the provision of the proposed services and the availability of alternative uses of such resources for the provision of other health services.
(8) The relationship of the proposed health services to ancillary or support services.
(9) Special needs and circumstances of those entities which provide a substantial portion of their services or resources, or both, to individuals not residing in the health service areas in which the entities are located or in adjacent health service areas. Such entities may include medical and other health professions schools, multi-disciplinary clinics, and centers for specialized services such as open heart surgery, radiation therapy, and renal transplantation.
(10) The special needs and circumstances of health maintenance organizations.
(11) The need for research and educational facilities, including, but not limited to, institutional training programs for doctors of osteopathy and medicine at the student, internship, and residency training levels to include the effects the project will have on clinical needs of health professional training programs in the service area, the extent to which the services will be accessible to health professional schools in the service area for training purposes if such services are available in limited number of facilities, the availability of alternative uses of such resources for the provision of other health services, and the extent to which the proposed services will be accessible to all residents of the service area.
(12)(a) The costs and methods of the proposed construction including the costs and methods of energy provision; and the availability of alternative, less costly, or more effective methods of construction.
(b) The probable impact of the proposed construction project on the costs of providing health services proposed by the applicant upon consideration of factors including, but not limited to, effects of competition on the supply of health services being proposed and improvements or innovations in the financing and delivery of health services which foster competition and service to promote quality assurance and cost effectiveness.
* * * * * *
Rule 10-5.12, Fla. Admin. Code reads in pertinent part:
10-5.12 Fair Hearing Procedures.
(1) Fair hearing demanded by aggrieved applicants, HSA's or substantially affected persons shall be conducted by the Division of Administrative Hearings under the provisions of the Administrative Procedures Act (Chapter 120, Florida Statutes). An HSA is aggrieved when the decision of the department on a certificate of need application is contrary to the recommendation of the HSA. An applicant is aggrieved when the department denies or only partially approves the applicant's own certificate of need application. A substantially affected person is aggrieved when that person has demonstrated his/her interests are substantially affected by the department decision to issue or deny a Certificate of Need.
* * * * * *
(8) The only decisions of the department which may be reversed or revised by the Hearing Officer are decisions as to the consistency or inconsistency of the application with standards, criteria, and plans described in rule 10-5.11 herein.
* * * * * *
[2] Section 381.494 provides in pertinent part:

(7) Duties and Responsibilities of Department; Rules.
(a) The department is designated as the single state agency to issue, revoke, or deny certificates of need and to issue, revoke, or deny exemptions from certificate-of-need review in accordance with present and future federal and state statutes.
[3] 42 U.S.C. § 300n-1 (1976 and Supp. IV 1980) provides in pertinent part:

§ 300n-1. Procedures and criteria for review of proposed health system changes
(a) Development and publication
In conducting reviews pursuant to subsections (e), (f), and (g) of section 3001-2 of this title or in conducting any other reviews of proposed or existing health services, each health systems agency shall (except to the extent approved by the Secretary) follow procedures, and apply criteria, developed and published by the agency in accordance with regulations of the Secretary; in performing its review functions under section 300m-2 of this title, a State Agency shall (except to the extent approved by the Secretary) follow procedures, and apply criteria, developed and published by the State Agency in accordance with regulations of the Secretary; and in performing its review functions a Statewide Health Coordinating Council shall (except to the extent approved by the Secretary) follow procedures and apply criteria developed and published by the Council in accordance with regulations of the Secretary. Procedures and criteria for reviews by health systems agencies, State Agencies, and Statewide Health Coordinating Councils may vary according to the purpose for which a particular review is being conducted or the type of health services being reviewed. Health systems agencies, the State Agency, and, if appropriate, the Statewide Health Coordinating Council within each State shall cooperate in the development of procedures and criteria under this subsection to the extent appropriate to the achievement of efficiency in their reviews and consistency in criteria for such reviews. The Secretary shall review at least annually regulations promulgated under this section and provide opportunity for the submission of comments by health systems agencies, State Agencies, and Statewide Health Coordinating Councils on the need for the revision of such regulations. At least forty-five days before the initial publication of a regulation proposing a revision in a regulation of the Secretary under this section, the Secretary shall, with respect to such proposed revision, consult with and solicit the recommendations from health systems agencies, State Agencies, and Statewide Health Coordinating Councils.
* * * * * *
(c) Minimum criteria
Criteria required by subsection (a) of this section for health systems agency, State Agency, and Statewide Health Coordinating Council review shall include consideration of at least the following:
* * * * * *
(6) In the case of health services proposed to be provided 
(A) the availability of resources (including health manpower, management personnel, and funds for capital and operating needs) for the provision of such services,
(B) the effect of the means proposed for the delivery of such services on the clinical needs of health professional training programs in the area in which such services are to be provided,
(C) if such services are to be available in a limited number of facilities, the extent to which the health professions schools in the area will have access to the services for training purposes,
(D) the availability of alternative uses of such resources for the provision of other health services, and
(E) the extent to which such proposed services will be accessible to all the residents of the area to be served by such services.
* * * * * *
[4] 42 U.S.C. § 300m-2 (1976 and Supp. IV 1980) provides in pertinent part:

§ 300m-2. State health planning and development functions
(a) Performance by State agency of a State designated under section 300m(b)(3) of this title
Each State Agency of a State designated under section 300m(b)(3) of this title shall, except as authorized under subsection (b) of this section, perform within the State the following functions:
* * * * * *
(4)(A) Serve as the designated planning agency of the State for the purposes of section 1320a-1 of this title if the State has made an agreement pursuant to such section, and (B) administer a State certificate of need program which applies to the obligation of capital expenditures within the State and the offering within the State of new institutional health services and the acquisition of major medical equipment and which is consistent with the standards established by the Secretary by regulation. A certificate of need program shall provide for procedures and penalties to enforce the requirements of the program. In performing its functions under this paragraph the State Agency shall consider recommendations made by health systems agencies under section 300l-2(f) of this title.
* * * * * *
[5] 42 C.F.R. § 123.412 (1982) provides in pertinent part:

§ 123.412 Criteria for State Agency review.
(a) The state Agency shall adopt, and use as applicable, specific criteria for conducting the reviews covered by this subpart. The criteria must be based only on the following general considerations, except that the State Agency may include any additional criteria which it prescribes by regulation in accordance with an authorization under State law. In the case of an HMO or an ambulatory care facility or health care facility controlled, directly or indirectly, by an HMO or combination of HMOs, the criteria must be based only on the considerations set forth in paragraph (a)(13) of this section.
* * * * * *
(5)(i) The need that the population served or to be served has for the services proposed to be offered or expanded, and the extent to which all residents of the area, and in particular low income persons, racial and ethnic minorities, women, handicapped persons, and other underserved groups, and the elderly, are likely to have access to those services.
(ii) In the case of a reduction or elimination of a service, including the relocation of a facility or a service, the need that the population presently served has for the service, the extent to which that need will be met adequately by the proposed relocation or by alternative arrangements, and the effect of the reduction, elimination or relocation of the service on the ability of low income persons, racial and ethnic minorities, women, handicapped persons, and other underserved groups, and the elderly, to obtain needed health care.
(6) The contribution of the proposed service in meeting the health related needs of members of medically underserved groups which have traditionally experienced difficulties in obtaining equal access to health services (for example, low income persons, racial and ethnic minorities, women, and handicapped persons), particularly those needs identified in the applicable health systems plan, annual implementation plan, and State health plan as deserving of priority. For the purpose of determining the extent to which the proposed service will be accessible, the State Agency shall consider:
(i) The extent to which medically underserved populations currently use the applicant's services in comparison to the percentage of the population in the applicant's service area which is medically underserved, and the extent to which medically underserved populations are expected to use the proposed services if approved;
(ii) The performance of the applicant in meeting its obligation, if any, under any applicable Federal regulations requiring provision of uncompensated care, community service, or access by minorities and handicapped persons to programs receiving Federal financial assistance (including the existence of any civil rights access complaints against the applicant);
(iii) The extent to which Medicare, Medicaid and medically indigent patients are served by the applicant; and
(iv) The extent to which the applicant offers a range of means by which a person will have access to its services (e.g., outpatient services, admission by house staff, admission by personal physician).
Note: Where appropriate, the State Agency may also consider other access issues, such as: (1) the extent to which the applicant grants medical staff privileges to physicians who serve the medically underserved; and (2) the extent to which the applicant takes action necessary to remove barriers that limit access to the health services of the applicant. These barriers may include unavailability of public transportation; absence of translation services where a substantial portion of the population of the health service area does not speak English as its primary language; building designs that substantially hinder use of the facility; and financial barriers (e.g., pre-admission deposits).
* * * * * *
[6] 42 C.F.R. § 123.413 (1982) provides:

§ 123.413 Required findings on access.
(a) Under § 123.412(a)(5) and (6), the State Agency is required to develop criteria based on considerations relating to the need of the population to be served for the proposed project and the extent to which the residents of the area will have access to the project. For each project it approves, the State Agency shall make a written finding (which shall take into account the current accessibility of the facility as a whole) on the extent to which the project will meet the State Agency's criteria developed based on the considerations in § 123.412(a)(5) and (6), except in the following cases:
(1) Where the project is one described in § 123.407(a) (projects to eliminate or prevent certain imminent safety hazards or to comply with certain licensure or accreditation standards); or
(2) Where the project is a proposed capital expenditure not directly related to the provision of health services or to beds or major medical equipment; or
(3) Where the project is proposed by or on behalf of an HMO or a health care facility which is controlled, directly or indirectly, by an HMO.
Explanatory Note: When a project is approved, then in addition to the written findings required by § 123.410(a)(6), to the extent that a project does not fall within one of these exceptions, a written finding under § 123.413 regarding the criteria on need and access developed under § 123.412(a)(5) and (6) is required. Examples of when the written finding is required as to whether a project satisfies the State Agency's criteria for need and access are as follows: (1) The applicant proposes to make a capital expenditure of $400,000 required solely to comply with State licensure standards. The written finding is not required. (2) The applicant proposes to provide a new coronary care service with annual operating costs or more than the expenditure minimum. The written finding is required if the project is approved. (3) The applicant proposes to make a capital expenditure of $200,000 to repave its parking lot, or to acquire computerized data processing equipment, or to repair or upgrade its heating or air conditioning equipment. The written finding is not required. (4) The applicant proposes to make a capital expenditure to add fifteen beds to its obstetrical ward. The written finding is required if the project is approved. (5) The applicant proposes to make a capital expenditure to renovate the pediatric ward of its facility. If the project is approved, a written finding is required because the project is directly related to the provision of health services.
(b) In any case where the State Agency finds that an approved project does not satisfy the State Agency's criteria based on the considerations in § 123.412(a)(5) or (6), it may, if it approves the application, impose the condition that the applicant take affirmative steps to meet those criteria.
(c) When this written finding is required, the State Agency, in evaluating the accessibility of the project, must take into account the current accessibility of the facility as a whole. If the State Agency disapproves a project for failure to meet the need and access criteria, it must so state in its written findings under § 123.410(a)(6).
(d) In any case where the State Agency finds that a project does not satisfy the State Agency's criteria based on the considerations in § 123.412(a)(5) or (6), it shall so notify in writing the applicant and the appropriate Regional Office of the Department of Health and Human Services.
[7] 42 C.F.R. § 123.410 (1982) provides in pertinent part:

§ 123.410 Procedures for State Agency review.
(a) The procedures adopted and used by a State Agency for conducting the reviews covered by this subpart must include at least the following:
* * * * * *
(6) Written findings and conditions. Provisions for written findings (including, as appropriate, the required findings under § 123.405(d) and § 123.413(a)) which state the basis for any final decision made by the State Agency. When a certificate of need is to be issued, these findings must include the finding of need required by § 123.408(a)(1). The State Agency may not make its final decision subject to any condition unless the condition directly relates to criteria established under § 123.412 or criteria prescribed by regulation by the State Agency in accordance with an authorization under State law. The State Agency shall send written findings to the applicant and to the health systems agency for the health service area in which the project is proposed, and shall make them available to others upon request. In the case of a project proposed by an HMO, the State Agency shall also send these written findings to the appropriate regional office of the Department of Health and Human Services at the time these are sent to the applicant.
* * * * * *