456 So.2d 928 (1984)
WHITEHALL BOCA, an Illinois Limited Partnership, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee. and
HEALTH CARE AND RETIREMENT CORPORATION OF AMERICA, Appellants,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
Nos. AW-15, AW-16, AW-179 and AW-193.
District Court of Appeal of Florida, First District.
September 5, 1984.
Rehearing Denied October 17, 1984.
*929 Jean Laramore and Alfred W. Clark, of Laramore & Clark, P.A., Tallahassee, for appellants.
James M. Barclay, Dept. of Health and Rehabilitative Services, Tallahassee, for appellees.
WIGGINTON, Judge.
By this consolidated appeal, Health Care and Retirement Corporation of America (HCR) and Whitehall Boca (Whitehall) seek review of final agency action taken by the Department of Health and Rehabilitative Services (HRS) and the Department of Administrative Hearings (DOAH) pursuant to section 120.54(3) and (4)(a), Florida Statutes. Specifically, they challenge HRS's denial of HCR's and Whitehall's petitions for separate 120.57 hearings, and DOAH's conclusion that the proposed amendment to rule 10-5.11, Florida Administrative Code, is a valid exercise of delegated legislative authority. We affirm.
The Florida Health Facilities and Health Services Planning Act, section 381.493 et seq., requires all health care related projects to file applications for certificates of need. Sections 381.494(1) and 381.495(2), Fla. Stat. (1983). The Department of Health and Rehabilitative Services, charged with the authority to issue licenses to health care facilities and health service providers, section 381.495(1), and to issue, revoke, or deny certificates of need, section 381.494(8)(a), promulgated rule 10-5.11 listing twelve general criteria against which applications for certificates of need were to be evaluated. In particular, subsection (3) of that rule allowed HRS to consider "[t]he need that the population served or to be served has for such proposed health hospice services." However, in Farmworker Rights Organization, Inc. v. State, Department of Health and Rehabilitative Services, 430 So.2d 1 (Fla. 1st DCA 1983), this Court held rule 10-5.11 to be an invalid exercise of delegated legislative authority. Although we noted therein that subsection (3) dealt with "access," we held it was not broad enough to include criteria mandated by applicable federal statutes and regulations concerned with access of low income and minority groups to health care facilities.[1]Id., at 7. Accordingly, HRS caused to be published notice of a proposed amendment to rule 10-5.11, seeking to amend the rule to read as follows:
(3)(a) The need that the population served or to be served has for the health or hospice services proposed to be offered or changed, and the extent to which all residents of the district, and in particular low income persons, racial and ethnic minorities, women, handicapped persons, other underserved groups and the elderly, are likely to have access to those services.
(b) The extent to which that need will be met adequately under a proposed reduction, elimination or relocation of a service, under a proposed substantial change in admissions policies or practices, or by alternative arrangements, and the effect of the proposed change on the ability of members of medically underserved groups which have traditionally experienced difficulties in obtaining equal access to health services to obtain needed health care.
(c) The contribution of the proposed service in meeting the health needs of members of such medically underserved groups, particularly those needs identified in the applicable district plan and State health plan as deserving of priority.

*930 (d) In determining the extent to which a proposed service will be accessible, the following will be considered:
1. The extent to which medically underserved individuals currently use the applicant's services, as a proportion of the medically underserved population in the applicant's proposed service area(s), and the extent to which medically underserved individuals are expected to use the proposed services, if approved;
2. The performance of the applicant in meeting any applicable Federal regulations requiring uncompensated care, community service, or access by minorities and handicapped persons to programs receiving Federal financial assistance, including the existence of any civil rights access complaints against the applicant;
3. The extent to which Medicare, Medicaid and medically indigent patients are served by the applicant; and
4. The extent to which the applicant offers a range of means by which a person will have access to its services.
(e) In any case where it is determined that an approved project does not satisfy the criteria specified in subparagraph (3)(a) through (d), the Department may, if it approves the application, impose the condition that the applicant must take affirmative steps to meet those criteria.
(f) In evaluating the accessibility of a proposed project, the accessibility of the current facility as a whole must be taken into consideration. If the proposed project is disapproved because it fails to meet the need and access criteria specified herein, the Department will so state in its written findings. In any case where a project does not satisfy the criteria specified in subparagraph (3)(a) through (d) above, the Department shall so notify in writing the applicant and the appropriate Regional Office of the United States Department of Health and Human Services.
HCR is a corporation which owns and operates nursing homes in several states, taking both private-pay patients and patients paying through Medicare and Medicaid, and has pending several applications for certificates of need to establish nursing homes in Florida. Whitehall operates a nursing home located in Boca Raton, Florida. Those residing there are entirely private-pay patients, as Whitehall's concept is to provide elite nursing home services to persons in the upper income bracket. The home is presently licensed for sixty-nine beds, but Whitehall desires to expand that number.
Pursuant to section 120.54(3),[2] both HCR and Whitehall requested a public hearing on the proposed rule. At the same time, both parties filed petitions seeking an administrative determination of the validity of the proposed rule as provided in section 120.54(4)(a).[3]
At the informal public hearing, HCR and Whitehall, each represented by counsel, and members of the public were given the opportunity to comment on the proposed rule amendments. At the outset of the hearing, though, the administrative hearing officer advised the parties that they could present evidence and argument, provide any written information or material, and direct specific questions to department personnel at the conclusion of the hearing, or alternatively, into the record, but that he and his staff would not conduct a "question and answer session," as it was the department's primary duty at a 120.54(3) informal hearing "to listen rather than to speak." In response to HCR's inquiry as to whether *931 HRS would make any presentation regarding the rule, the hearing officer stated that questions would be commented on by department personnel but not resolved.
Following a presentation of written public comments entered into the record, several persons made oral presentations.[4] Counsel for Whitehall raised the amendment's constitutional implications and argued that it was in excess of legislative authority and not in compliance with federal guidelines. Counsel for HCR commented on perceived procedural defects in the rule-adoption process and on the impact of the proposed rule on the nursing home industry. Further comment was made on the absence of definitions in the rule, and the suggestion was again made that the rule exceeded statutory authority and was not in compliance with federal requirements for the certificate of need program. HCR then posed a series of questions concerning mainly the mechanics of the proposed rule, how it would be administered, and to whom it would apply. However, neither HCR nor Whitehall sought to call witnesses, present issues or evidence, or propose any suggestions regarding the rule.
The department refused to answer any of the questions presented by HCR and Whitehall. Consequently, both requested, pursuant to section 120.54(16),[5] that the informal proceeding be terminated and that a formal 120.57 proceeding be initiated. That request was denied orally at the hearing, and later by final written order.
A hearing was subsequently held before the DOAH on the rule challenge petitions. Following witness testimony and presentation of exhibits, the hearing officer entered a final order holding the proposed amendment to rule 10-5.11(3) to constitute a valid exercise of delegated legislative authority.
On appeal, HCR and Whitehall raise four points to challenge the orders entered by HRS and DOAH. Preliminarily, they argue that HRS abused its discretion in its failing to convene a separate hearing pursuant to section 120.54(16). Relying on our decision in Balino v. Department of Health and Rehabilitative Services, 362 So.2d 21 (Fla. 1st DCA 1978), HCR and Whitehall argue that they were denied any meaningful dialogue with HRS regarding the proposed rule amendment, and were thereby effectively prohibited from analyzing or commenting upon HRS rationale in developing the rule. HCR and Whitehall maintain that in order to obtain "good faith participation" by HRS in the rulemaking proceedings, a hearing is required pursuant to 120.54(16), and HRS's failure to convene that hearing constituted material error under Balino. We disagree.
Section 120.54(16) accords an agency the discretion to convene a separate 120.57 hearing only upon its determining that the informal rulemaking hearing is inadequate to protect a party's substantial interests. The purpose of the informal hearing attended by HCR and Whitehall, as *932 stated in section 120.54(3), was to accord them the opportunity "to present evidence and argument ... appropriate to inform" HRS of their contentions. However, as HRS aptly argues, neither HCR nor Whitehall indicated at the hearing that they had witnesses to testify or exhibits to present which would justify the trial-type presentation contemplated by 120.54(16) and Balino. Although reacting perhaps too abruptly, the department hearing officer was nonetheless eminently correct in refusing to respond to the barrage of questions fired at him by counsel for HCR, as the hearing was not convened for that purpose. Appellants have failed to show manifest error amounting to an abuse of discretion on the part of HRS, and accordingly, that the 120.54(3) hearing was inadequate to protect their interests.
Similarly, appellants have failed to demonstrate error arising from the rule challenge proceeding. The remaining three points raised by them are devoted to the issues argued before the DOAH hearing officer. Principally, HCR and Whitehall contend that the proposed amendment violates the United States and Florida constitutions as impermissibly mandating the use of private property for a public purpose; that it is an invalid exercise of delegated legislative authority; and, finally, that it fails to comply with the pertinent state and federal statutes.
Appellants' first contention can be easily dismissed as premature, as was similarly concluded by the hearing officer. Rule 10-5.11(3), as proposed, does not on its face mandate the taking of private property for public use. Although in application the rule could conceivably result in the denial of an application for a certificate of need in some instances, the constitutionality of that action will be an issue reserved for the happening of that event.
Appellants' remaining contentions mainly revolve around the fact that the proposed amendment appears to quote verbatim the federal regulation to which it must conform.[6] In that regard, we agree with the hearing officer's well-reasoned conclusions of law and adopt them as our own:
The accessibility criterion, both geographic and economic, is clearly embraced within the general statutory criteria set forth in Section 381.494(6)(c)1, 2, and 5, Florida Statutes. In addition, Section 381.494(8)(a), Florida Statutes, requires HRS to review certificate of need applications in accordance with present and future federal statutes. As clearly pointed out in the Farmworker case, supra, the federal statutes require the States to consider the extent to which the proposed service will be accessible to all residents of the service area, 42 U.S.C. Section 300n-1(c)(6)(E), and to administer the certificate of need program in a manner consistent with standards established by federal regulations, 42 U.S.C. Section 300m-2(a)(4)(B). The federal regulations contain the exact criteria as that set forth in the proposed rule with regard to both the evaluation of the accessibility of services for low income persons, racial and ethnic minorities, women, handicapped persons and other underserved groups and the requirements for written findings. 42 C.F.R. Sections 123.412(a)(5) and (6) and 123.413(a). Thus, it cannot be said that the proposed rules exceed either the statutory authority delegated to HRS by the Florida legislature or the federal regulations established by the Secretary of the United States Department of Health and Human Services. The fact that the respondent utilized in its proposed rule as its specific criteria relating to access to the medically underserved the identical "general" considerations set forth in the *933 federal regulations does not violate or exceed its statutory authority or the requirements of federal law.
We would expand on the hearing officer's conclusion in her final sentence as above quoted to observe that the "parroting" of the federal regulation by HRS is not prohibited by our decision in Farmworker Rights Organization, 430 So.2d at 6. Until HRS is able to acquire superior knowledge of economic and minority access needs in particular regions of this state, which obviously can only come about on a case-by-case basis, the proposed rule is sufficiently specific. We fail to see how the department could have honed the federal regulations to any greater degree of specificity. Certainly neither HCR nor Whitehall offered any suggestions toward that end.[7] Accordingly, we affirm the hearing officer's final order.
AFFIRMED.
SMITH and WENTWORTH, JJ., concur.
NOTES
[1] In order to be a valid exercise of delegated legislative authority under section 381.494(8)(a), the HRS rules must be in accordance with federal statutes. Farmworker Rights Organization, 430 So.2d at 4.
[2] 120.54(3) provides in part:

If the intended action concerns any rule other than one relating exclusively to organization, procedure, or practice, the agency shall, on the request of any affected person received within 14 days after the date of publication of the notice, give affected persons an opportunity to present evidence and argument on all issues under consideration appropriate to inform it of their contentions.
[3] 120.54(4)(a) provides:

Any substantially affected person may seek an administrative determination of the invalidity of any proposed rule on the ground that the proposed rule is an invalid exercise of delegated legislative authority.
[4] The Vice President of the Public Health Trust of Dade County regretted the necessity of having the rule but felt it was necessary. A member of the Health Planning Council of Dade and Monroe Counties was present to support what it viewed as further clarification of the existing rule. The Vice President for Government Relations for the Florida Hospital Association presented seven technical comments directed to the rule. An associate counsel for a corporation involved in nursing homes in Florida and Indiana commented about the advisability of amending a portion of Rule 10-5.11, and commented about evaluating access to nursing home care for the chronically ill under age 65. Counsel for the Florida League of Hospitals commented about the general policy statements included in the rule and discussed implementation of the rule.
[5] 120.54(16) provides:

Rulemaking proceedings shall be governed solely by the provisions of this section unless a person timely asserts that his substantial interests will be affected in the proceeding and affirmatively demonstrates to the agency that the proceeding does not provide adequate opportunity to protect those interests. If the agency determines that the rulemaking proceeding is not adequate to protect his interests, it shall suspend the rulemaking proceeding and convene a separate proceeding under the provisions of s. 120.57. Similarly situated persons may be requested to join and participate in the separate proceeding. Upon conclusion of the separate proceeding, the rulemaking proceeding shall be resumed.
[6] As noted in Farmworker Rights Organization, rule 10-5.11 was to conform to 42 U.S.C. § 300m-2(a)(4)(B), providing that state agencies shall administer a certificate of need program which "is consistent with the standards established by the Secretary by regulation." 42 C.F.R. §§ 123.412 and 123.413 are the pertinent federal regulations. For their text see Farmworker, 430 So.2d at 5-7, fn. 5 & 6.
[7] Of course, parties affected by this rule have the mechanism provided by section 120.54(5) to petition HRS to adopt, amend, or repeal a rule.