## REDMAN v. DEPARTMENT OF CORRECTIONS
### Case No. 84-1916R
State of Florida, Division of Administrative Hearings

January 31, 1985

**APPEARANCES OF COUNSEL**

Petitioner, pro se.

**Randall Holland,** Assistant Attorney General, for respondent.

**OPINION**

ROBERT T. BENTON, II, Hearing Officer.

This matter came on for hearing at Union Correctional Institution in Raiford, Florida, before the Division of Administrative Hearings by its duly designated Hearing Officer, Robert T. Benton, II, on October 22, 1984. Petitioner appeared on his own behalf. Respondent was represented by counsel.

Along with petitioner Redman, John Russell, Douglas Adams, Winston Lloyd, Joe Holland, and Nyadzi Dzinokunda Rufu filed a petition for administrative determination of the invalidity of an existing rule. At hearing it was made to appear that Joe Holland had been released by respondent's custody, and Nyadzi Dzinokunda Rufu

elected on the record to dismiss the petition, insofar as it related to him. Messrs Holland and Rufu were, accordingly, dismissed as petitioners before the taking of evidence began.

Rules 33-22.01 through 33-22.12, Florida Administrative Code, governing inmate disciplinary proceedings, are challenged here. At the close of petitioner's case, respondent stated various motions, including a motion to dismiss Messrs. Russell, Adams and Lloyd as petitioners on the ground that they had not established standing. As to petitioner Russell, the evidece was that his last disciplinary report was on April 13, 1984, and that no proceedings on the report were pending. What the disposition may have been the evidence did not show, and no lingering ill effects were proven, in any event.

As far as the evidence at hearing revealed, Mr. Adams had never been involved in any disciplinary proceeding of any kind. Mr. Lloyd proved that he had received a disciplinary report in May of this year alleging verbal disrespect on his part for an officer but that the charges had not been sustained. In these circumstances, Messrs. Russell, Adams and Lloyd were dismissed as petitioners, on the authority of the *Florida Department of Offender Rehabilitation v. Jerry*, 353 So.2d 1230 (Fla. 1st DCA 1978) cert. den. sub nom. *Jerry v. Florida Department of Offender Rehabilitation*, 359 So.2d 1215 (Fla. 1978).

After the hearing had concluded, Douglas L. Adams filed a motion for reconsideration to which he attached a request for administrative remedy or appeal and a disciplinary report worksheet, reflecting an administrative determination adverse to him, on allegations that he had disobeyed a guard's verbal order on August 4, 1983. The motion for reconsideration alleges that disciplinary action against him in the wake of this incident "result[ed] in a loss of gain-time and ultimately, an extension of his presumptive parole release date."

Respondent filed a motion to strike or deny motion for reconsideration on November 28, 1984. On December 3, 1984, Mr. Adams filed a reply to alternative motion to strike, but he has failed to show good cause for reopening the record after conclusion of the hearing.

On motion for extension of time filed by Joseph Redman and Douglas L. Adams, time for filing of posthearing submissions was extended until December 10, 1984.

## ISSUE

Whether Rules 33-22.01 through 33-22.12, Florida Administrative Code, are an invalid exercise of delegated legislative authority, in whole or in part?

163

## FINDINGS OF FACT

Joseph Redman, who had been confined at Union Correctional Institution since April of 1978, engaged a correctional officer in a verbal exchange one day last August. The correctional officer told him he was guilty of disobeying a verbal order and an investigating officer was assigned to the matter. The specification was changed to disorderly conduct, petitioner Redman was found guilty, placed in disciplinary confinement for 28 days and penalized by the forfeiture of 60 days' gain time. At the disciplinary hearing, petitioner was first apprised only of the written statement of the charging officer. Petitioner asked that two witnesses be called, another correctional officer and another inmate. He was then told that the other correctional officer's story had corroborated the first officer's charges, and his request was denied.

On March 12, 1984, the following rules took effect:

33-22.01 General Policy.

(1) It is the intent of this rule to assure that inmate discipline and control are fully consonant with the correctional objectives of the institution, the focus being on:

(a) Individual inmate adjustment to the program, behavior standards, and limitations necessarily imposed by the administration;

(b) The general welfare and safety of the institutional community; and

(c) The incorporation of due process standards for inmate disciplinary hearings.

* * *

33-22.02 Terminology and Definitions. The following terms, as defined, should be standard usage throughout the Department:

(1a) Disciplinary Team—That group of employees designated by the institution's administrator to handle major disciplinary action.

(2b) Disciplinary Confinement—Confinement which includes the loss of privileges normally afforded other inmates and is effected only after procedures outlined in this chapter have been fully complied with.

(3c) Material Witness—Important witness having evidence relevant to facts in dispute; one whose testimony is important to decide the case.

(4d) Corrective Consultation—A form used to report a violation of rules of such a minor nature that no disciplinary report is felt

164

necessary, but where a written reprimand is utilized to correct the inappropriate behavior.

(5e) Major Violation—Any rule violation that is of such magnitude that it is likely that disciplinary action would include loss of gain time or disciplinary confinement if found guilty. Such cases will be handled by the Disciplinary Team.

(6f) Minor Violation—Any rule violation for which a verbal or written corrective consultation is not sufficient, but for which loss of gain time or placement in disciplinary confinement will not be imposed. Such cases may be handled by the Hearing Officer.

(7g) Hearing Officer—Any employee equal to or exceeding the rank of Lieutenant who will be responsible for reviewing and disposing of disciplinary reports involving incidents that can be handled short of disciplinary confinement or loss of gain time. He will evaluate the facts of the case and when appropriate impose discipline. Such cases would then not be sent to the Disciplinary Team for hearing.

(8h) Disciplinary Report (DC4-804)—A formal method of charging an inmate with a rule violation causing written notice to be served on the inmate, a complete investigation of the allegations, fact finding by an impartial team of staff members, and, when appropriate, sanctions being imposed as discipline.

(9i) Senior Correctional Officer—The custodial officer in charge of security on any work shift.

(10j) Correctional Officer Chief—The highest ranking correctional officer employed at the institution or facility.

33-22.03 Disciplinary Team, Hearing Officer and Peer Groups.

(1)(a) Disciplinary teams shall consist of three members appointed in writing by the Superintendent and subject to the approval of the Regional Director.

* * *

(c) No person shall serve as a member of the Disciplinary Team in a specific case when he is a witness, when he initiates the charge, when he is the investigating officer, or when he is a person charged with a subsequent review of the decision.

* * *

(2)(a) Minor rule violations may be heard by the Hearing Officer who is appointed in writing by the Superintendent and approved by the regional Director . . . .

(b) When the Hearing Officer determines that he can dispose of a

**165**

disciplinary report, the inmate shall be so informed. The inmate may, at any time before he enters a plea, request that the case be referred to the Disciplinary Team.

\* \* \*

33-22.04 Reporting Disciplinary Infractions

(1) When an employee witnesses or has reason to believe that an act was committed by an inmate which is in violation of the rules and regulations, and if the employee determines that the infraction can be properly disposed of without a formal disciplinary report, the employee may reprimand the inmate verbally or in writing. If a Corrective Consultation is issued, the inmate must be given a copy with 24 hours, and one copy will be placed in the inmate's record jacket.

(2) If the employee cannot resolve the matter, the supervising officer on duty will review the circumstances with the employee and/or inmate involved. The supervising officer may complete a Corrective Consultation Form, if appropriate. The supervising office may advise the employee to follow through with writing a formal disciplinary report as provided in section 33-22.05.

\* \* \*

33-22.05 Preparation of Disciplinary Reports, Delivery of Charges, and Investigation.

\* \* \*

(2) Section I, Charges, shall be completed before a copy is given to the inmate pursuant to subsection (3) of this rule.

(a) Only one offense shall be included in each Disciplinary Report. If necessary, separate Disciplinary Reports shall be used for multiple offenses.

(b) The charge shall specifically cite by name and number the offense as listed in rule 33-22.12, Rules of Prohibited Conduct and Penalties for Infractions.

(c) The Statement of Facts shall contain a description of the specific act or acts the inmate is alleged to have committed, including date, time and place, and any other specific facts, including any unusual behavior, necessary for an understanding of the charge. In addition, any staff member who witnessed the incident will be noted. The employee writing the Disciplinary Report will indicate the date and time the report was completed and will sign the report.

(3) Section II, Delivery of Charge.

(a) Prior to the delivery of charge, the date the disciplinary hearing will begin shall be entered. The beginning time for the disciplinary hearings on that date shall also be indicated. The inmate must be given at least twenty-four (24) hours from the time the charge is delivered to prepare for the disciplinary hearing . . . .

\* \* \*

(4) Section III, Report of Investigation. Upon receipt of the Disciplinary Report, the supervising officer will review the report and, when the facts suggest that the alleged violation is significant, he will cause the report to be forwarded to the Correctional Officer Chief.

(a) Upon approval of the Correctional Officer Chief, an impartial investigation of the charge against the inmate will be conducted. This investigation should normally begin within twenty-four (24) hours of the report's being written. The investigation will be completed without unreasonable delay.

(b) The investigation officer is responsible for obtaining the inmate's version of the offense as well as contacting the charging officer and any other staff members or inmates who have information pertaining to the allegation and the charge. The inmate charged will be asked if he has any material witnesses to offer in his behalf. If the inmate has no witnesses, it must be noted in the report. If names of witnesses are given, the investigating officer will then interview both inmate and staff witnesses. If inmate witnesses or staff witnesses are not contacted, a statement as to why they were not contacted must be included. Opinions as to innocence or guilt will not be made by the investigating officer.

(c) The officer conducting the investigation will indicate in his report whether the inmate was placed in administrative confinement and the basis of such confinement or left in the inmate population pending disposition of the charge.

33-22.06 Conduct of Disciplinary Hearings. Disciplinary hearings before either the Hearing Officer or the Disciplinary Team shall be conducted as follows:

\* \* \*

(3)(a) The inmate shall be asked whether he desires a staff member to be appointed to assist him at the hearing. If assistance is requested a staff member shall be selected from a list of approved staff members designated by the Superintendent. The Hearing Officer or the Chairman of the Disciplinary Team may appoint a staff member to assist the inmate without a request by the inmate.

167

(b) A staff member appointed under this subsection to assist an inmate shall not function as a[n] all-out advocate or defense attorney. Rather, the staff member is to make sure the inmate fully understands the nature of the charge against him and to aid the inmate in presenting his side of the alleged incident to the Hearing Officer or Disciplinary Team. No attorneys or other inmates are allowed to represent inmates at disciplinary hearings.

(c) The hearing may be continued if necessary to allow the inmate and the appointed staff member to consult.

\* \* \*

(9) If the inmate pleads not guilty evidence will be allowed to be presented, including appropriate inmate and staff witnesses. The inmate may make any relevant closing statement for consideration by the Hearing Officer or the Disciplinary Team.

\* \* \*

(11) . . . The Team shall discuss the case, deciding upon the findings of fact that are supported by evidence . . . .

(12) The decision by the Disciplinary Team or the Hearing Officer shall include the following elements:

(a) A finding of guilty or not guilty for the charge,

(b) A statement of the specific facts and evidence that support the finding, and

(c) The penalty recommended.

(13) When the Team has reached its decision, the inmate shall be brought back into the room and the decision shall be read to him. The decision will be reduced to writing and a copy will be given to the inmate.

\* \* \*

(15) Upon the conclusion of the hearing the inmate shall be informed that he may appeal the decision by means of the Inmate Grievance Procedure . . . .

\* \* \*

33-22.07 Disciplinary Hearings; Miscellaneous Provisions.

(1) Witnesses.

(a) The Hearing Officer or the Chairman of the Disciplinary Team may call inmate or employee witnesses. Subject to the provisions of paragraph (b) below, any witness whose testimony is necessary for a

proper evaluation of the circumstances, or whose testimony is requested by the inmate, shall be called to testify at the hearing.

(b)1. No witness shall be called if it is clear that his testimony would be irrelevant, immaterial or repetitive.

2. An inmate witness may elect to submit a signed statement instead of making a personal appearance.

3. If a witness is unavailable to testify at the hearing his signed statement may be accepted as evidence.

4. Signed statements used as evidence shall be read to the inmate defendant at the hearing and, except as provided in paragraph 5. below, he shall be given an opportunity to examine them.

5. The Hearing Officer or the Chairman of the Disciplinary Team may determine that certain witnesses should not be called or that certain information shall not be disclosed because to do so would create a risk of reprisal, under- mine authority or otherwise present a threat to the security or order of the institution. The reason for any restriction shall be fully explained in the record of the hearing, but information that should not be disclosed shall be withheld from the inmate.

(c) The inmate shall not be permitted to cross-examine witnesses.

\* \* \*

(3) Once a Disciplinary Report has been written and the hearing convened, the original charge may not be reduced by the Disciplinary Team to what might be termed a "lesser included offense." If the hearing has not gone to the point of a decision, the hearing may be recessed and the entire Disciplinary Report returned for further review and investigation. If that further review suggests a different charge should have been indicated, the report is to be rewritten and handled in the same manner as an entirely new Disciplinary Report . . . .

\* \* \*

33-22.08 Disciplinary Action.

(1) The Disciplinary Team or the Hearing Officer may take any of the following actions:

(a) Dismiss the charge or find the inmate not guilty. If an inmate is found not guilty or if the charge is dismissed, all reports shall be so noted.

(b) Reprimand the inmate.

(c) Place the inmate on probation for a specific term or suspend action for a specific time.

(d) Withdraw routine mailing or visiting privileges for a period commensurate with the violation, not to exceed sixty (60) days, as approved by the Superintendent. This alternative is selected when the violation involves these privileges.

(e) Withdraw any other privileges as determined justifiable, or make extra duty assignments during leisure hours.

(f) Assign the inmate to a disciplinary squad.

(g) Accept donations from inmates participating in community work release only and not to exceed $50. The donations will be deposited in the Inmate Welfare Fund and a receipt will be given to the inmate. The inmate shall be given a choice between making such a donation and having another authorized penalty imposed.

(h) Assign this case to the Classification Team for individual review and counseling.

(i) Confiscate contraband items, including excessive monies or canteen coupons.

(2) The Disciplinary Team may also take any of the following actions:

(a) Assign the inmate to disciplinary confinement on a part-time basis with continued participation in assigned responsibilities. Such part-time confinement is not to exceed the maximum permitted under the rules. A part of a day of confinement will be equal to one whole day in computing maximum confinement.

(b) Place the inmate in disciplinary confinement for a definite or indefinite period of time, not to exceed the maximum for the offense as shown in rule 33-22.12, Rules of Prohibited Conduct and Penalties for Infractions. If an inmate has been placed in administrative confinement pending a disciplinary hearing and is subsequently placed in disciplinary confinement, the Disciplinary Team should take that time into consideration in determining the number of days of recommended disciplinary confinement. Disciplinary confinement will be utilized only as a last resort.

(c) Recommended loss of gain time the Team may feel is justified in each case up to the maximum penalty as set forth in rule 33-22.12, Rules of Prohibited Conduct and Penalties for Infractions . . . .

* * *

33-22.09 Review and Final Action.

\* \* \*

(2) The Superintendent acts as the reviewing and approving authority and may approve, modify downward, or disapprove the recommended disciplinary action or may return the report to the team for additional information or reconsideration of the recommended action . . . .

\* \* \*

(4) Reports not required to be reviewed in the Central Office will be filed in the inmate's institutional record upon approval by the Superintendent.

(5) Section V, Central Office.

(a) Disciplinary reports involving loss of gain time, disciplinary confinement, or restitution will be forwarded to the Central Office for final review.

\* \* \*

33-22.10 Additional Time Limits:

\* \* \*

(4) The thirty (30) day time limit for filing a grievance pertaining to disciplinary action shall begin to run when the inmate is given written notice of the decision of the Hearing Officer or the Disciplinary Team.

\* \* \*

33-22.12 Rules of Prohibited Conduct and Penalties for Infractions. The following table shows established maximum penalties for the indicated offenses. As used in the table, "DC" means the maximum number of days of disciplinary confinement that may be imposed and "GT" means the maximum number of days of gain time that may be taken. The "+" sign in this table does not signify that penalties of both types must be imposed. "All GT" includes both earned and unearned gain time. In addition to the penalties listed below, inmates may be required to pay for damaged, destroyed or misappropriated property under the provisions of Rule 33-22.08(2)(d)

SECTION 1—ASSAULT, BATTERY, THREATS, AND DISRESPECT

\* \* \*

1-4 Disrespect to officials, employees, or other persons of constituted authority expressed by means of words, gestures, and the like 30 DC + 60 GT

171

\* \* \*

## SECTION 2—RIOTS, STRIKES, MUTINOUS ACTS AND DISTURBANCES

\* \* \*

2-2 Inciting or attempting to incite riots, strikes, mutinous acts, or disturbances. (conveying any inflammatory, riotous or mutinous communication by word of mouth, in writing or by sign, symbol or gesture) 60 DC + 180 GT

\* \* \*

2-4 Fighting 30 DC + 30 GT

\* \* \*

## SECTION 6—DISOBEYING ORDERS

6-1 Disobeying verbal or written order (any order given to an inmate or inmates by a staff member or other authorized person) 30 DC + 60 GT

\* \* \*

## SECTION 9—MISCELLANEOUS INFRACTIONS

\* \* \*

9-4 Attempt, conspiracy, or attempted conspiracy to commit any crime or violation of the Rules of Prohibited Conduct 30 DC + 90 GT

| | |
|---|---|
| 9-6 Bartering with others | 15 DC + 30 GT |
| 9-17 Disorderly conduct | 30 DC + 60 GT |
| 9-20 Extortion or attempted extortion | 60 DC + 60 GT |
| 9-21 Fraud or attempted fraud | 30 DC + 90 GT |

Petitioner and respondent stipulated that "disobeying orders" amounted to an offense under the rules regardless of the substance of the order. According to Dr. Vernon Fox, petitioner's expert witness, the rules assure that guards will give inmates only lawful orders. John Mitchell Russell testified, however, that he was cited for "disobeying a verbal order" on April 13, 1984, for refusing to give a guard his hamburger. Brenell Hadley spent nine days in disciplinary confinement and lost 30 days' gain time on grounds of disobedience of a guard's order to leave the law library even though he did leave originally, and only returned after another guard had issued a pass authorizing him to be in the law library. Larry Williams received a "correctional consulta-

172

tion" for placing his shoes on the wrong counter on grounds he had disobeyed a verbal order. On occasion, correctional officers order prisoners to hand over their money or coupons and not to speak, according to prisoners' testimony.

Dr. Fox explained that respondent's rule on disorderly conduct is a broad grant of authority, which is probably appropriate in a prison setting. It is one of the rules usually found in penal institutions. Respondent's Wilson Bell, director of its adult services program, testified that some conduct permissible "on the street" could be explosive in a prison setting and stated his expert opinion that a lengthier and more detailed definition of disorderly conduct would be less useful.

## CONCLUSIONS OF LAW

Petitioner Joseph Redman established standing by showing that he lost 60 days' gain time as a result of the application of Rule 33-22.12(9-17), Florida Administrative Code, and the procedures specified by Rule 33-22.03 *et seq.*, Florida Administrative Code. This loss of gain time is a present, ongoing, substantial effect of the rules; the sentence he is now serving is enhanced. Douglas Adams would also have established standing on this basis if the documentation he submitted posthearing had been authenticated and admitted at hearing, unless respondent had succeeded in rebutting it. But the record had closed by the time he offered the material and he has not made a showing of good and sufficient reason to reopen the record.

As prisoners, all of the petitioners live under the shadow of the rules challenged here whether they ever commit an infraction or stand accused of rule violations themselves. This effect of the rules is the same effect held to lack necessary immediacy in *Department of Offender Rehabilitation v. Jerry*, 353 So.2d 1230 (Fla. 1st DCA 1978), cert. den. sub nom. *Jerry v. Florida Department of Offender Rehabilitation*, 359 So.2d 1215 (Fla. 1978). Under the rule of the *Jerry* case, no petitioner other than Joseph Redman proved standing to bring a challenge to these rules. But see *Florida Home Builders Association v. Department of Labor and Employment Security*, 412 So.2d 351, 354 (Fla. 1982).

### *FIRST AMENDMENT CHALLENGE* NOT COGNIZABLE UNDER SECTION 120.56

Petitioner Redman attacks the use of the unrestricted phrase "disorderly conduct" as vague and overbroad. Inasmuch as he was punished under this rubric for nothing more than spoken words, it may be that

petitioner would have standing in court to challenge Rule 33-22.12(9-17), Florida Administrative Code, as impermissibly sweeping protected expression within its ambit. See *Terminiello v. Chicago,* 337 U.S. 1, 93 L.Ed. 1131 (1949). But in proceedings like these, brought pursuant to Section 120.56, Florida Statutes (1983), hearing officers of the Division of Administrative Hearings are without authority to declare existing rules unconstitutional. *State, Department of Administration, Division of Personnel v. State, Department of Administration, DOAH,* 326 So.2d 187 (Fla. 1st DCA 1976). No petitioner proved standing to challenge Rule 33-22.12(6-1), Florida Administrative Code, which proscribes "[d]isobeying verbal or written order."

## EVIDENCE AND HEARSAY ADMISSIBLE

Petitioner challenges as arbitrary and capricious the procedures the rules embody. Petitioner contends that the "rules do not define evidence, nor what type of evidence will support a finding of guilt, therefore, the challenged rules are unreasonable in allowing guilty findings without any evidence." In discussing what is admissible, the rules used the word evidence, which should be construed to mean evidence as defined by the Florida Evidence Code, Chapter 90, Florida Statutes (1983); the parties suggested no other construction. The rules also allow hearsay in certain circumstances.

## BURDEN OF PROOF

Nowhere in the rules is there a specific provision assigning the burden or proof or specifying what the burden is in disciplinary proceedings. Such a provision would be inappropriate in Rule 33-22.04, Florida Administrative Code, which relates to the reporting of disciplinary infractions, or in· Rule 33-22.05, Florida Administrative Code, which has to do with investigations. But Rule 33-22.06, Florida Administrative Code, while it describes the conduct of disciplinary hearing in considerable detail (e.g. the "staff member appointed . . . to assist an inmate shall not function as a[n] all-out advocate"), Rule 33-22.06(3)(b), Florida Administrative Code, is silent on two fundamental questions.

As these rules are written, widely varying hearing procedures are equally authorized. The rules do not specify whether the prisoner has the burden to disprove the accusations against him or whether the burden of proof lies with his accusers. Nor does the rule specify the magnitude of the burden of proof. In Rule 33-22.06(11), Florida Administrative Code, there is reference to "findings of fact that are supported by the evidence," but the rule does not state whether the

174

preponderance of competent evidence or some other standard is to be used.

Must the prison authorities show only that some evidence supports the charges, which, after all, will ordinarily have already been carefully examined in a formal investigation? Must the inmate show clearly and convincingly that the charges lack a foundation? Since the outcome of the proceedings may extend a prisoner's term of confinement for months must the prison administration prove its charges beyond a reasonable doubt, just as in a misdemeanor prosecution? Is a guard's hearsay statement sufficient to overcome the sworn testimony of 15 inmates, or other legally competent evidence?

These rules do not have the benefit of judicial gloss as to burden of proof. Neither *Wolff v. McDonnell*, 418 U.S. 539 (1974) nor *Myers v. Askew*, 338 So.2d 1128 (Fla. 4th DCA 1976) specify who shall have the burden of proof or what the burden shall be. The challenged rule provisions, by failing to specify who has what burden of proof, leave these crucial decisions to prison guards in individual cases. Uniformity on these basic questions is essential, if these procedural rules, which are administered by non-lawyers, are to be applied evenhandedly. Unlike other citizens, prisoners cannot look to Section 120.57 proceedings to remedy the imperfections of a rule applied against them. *Cf. Whitehall Boca v. Department of Health and Rehabilitative Services*, 456 So.2d 928 (Fla. 1st DCA 1984).

The rule governing disciplinary hearings does not specify "what type of evidence will support a finding of guilt," and leaves open the possibility of inconsistent, dispositions in individual cases. Provisions omitted from a rule, no less than provisions included, may render a rule fatally defective. *Farmworker Rights Organization, Inc. v. State, Department of Health and Rehabilitative Services*, 430 So.2d — (Fla. 1st DCA 1983). The thrust of petitioner's contention is that Rule 33-22.06, Florida Administrative Code, should be declared invalid because it allows arbitrary and capricious results in individual cases. See *Department of Health and Rehabilitative Services v. Johnson and Johnson Home Health Care, Inc.*, 447 So.2d 361 (Fla. 1st DCA 1984); *Agrico Chemical Co. v. Department of Environmental Regulation*, 365 So.2d 759 (Fla. 1st DCA 1979), cert. den. sub nom. *Askew v. Agrico Chemical Co.*, 376 So.2d 74 (Fla. 1979).

But the rule regularizes the factfinding process to some extent, even if inadequately. Declaring the rule an invalid exercise of delegated legislative authority would not bring the answers to the questions of who has the burden of proof and what the burden amounts to any

**175**

closer. Petitioner's remedy is to petition for further rulemaking pursuant to Section 120.54(5), Florida Statutes (1984 Supp.), which prisoners are specifically permitted to do by Section 120.52(11), Florida Statutes (1984 Supp.).

It is, accordingly,

ORDERED:

The petition for administrative determination of the invalidity of an existing rule is denied.